STATE, EX REL. WHITE *v.* GRANT SUPERIOR COURT ET AL.*

[No. 25,783.   Filed October 13, 1930.]

*Reported and annotated 71 A. L. R. 1354.

*Harry Roberts,* for relator.
*Thompson, Rabb & Stevenson, George Koons* and *Everett Warner,* for respondents.

*James M. Ogden,* Attorney-General, *Joseph W. Hutchinson* and *V. Ed Funk,* Deputy Attorney-Generals, *Amici Curiae.*

TRAVIS, J.—Relator asks that a writ issue out of this court to prohibit the Grant Superior Court from exercising criminal jurisdiction. Relator alleges that a case was begun in the Grant Superior Court June 13, 1929, upon an affidavit approved by the prosecuting attorney, by which relator is charged with the offense of assault and battery; that a warrant was issued for the arrest of relator; and he was arrested and brought before the Grant Superior Court; that, upon the action of the court, which fixed the bond for his appearance, relator moved to dismiss and discharge him from custody, and not to require him to give such bond, and that the cause against him be dismissed, for the reason that the Grant Superior

Court, as established and created by the act of the General Assembly, Acts 1909, ch. 35, is a court of limited civil jurisdiction only, and has no criminal jurisdiction, and is not a criminal court, and that the court had no jurisdiction of the subject-matter of the cause of action; that this motion was overruled; that, to avoid being confined in jail, relator gave bond as directed by the court, under protest, and he was released from custody; that thereafter, June 13, 1929, relator was, by the action of the court, arraigned upon the criminal charge against him, and immediately directed by the court to plead to the charge; that then and there relator filed his plea to the jurisdiction of the court for want of jurisdiction of the court for the reason that the court is not a criminal court, and that such court has no criminal jurisdiction; that the demurrer by the State of Indiana to relator's plea to the jurisdiction of the court, was, by the court, sustained; that, immediately thereafter, the court ruled that this relator plead to the charge; that relator refused to plead further to the affidavit which charged the offense, and the court then and there entered a plea of not guilty for relator, and set the cause of action for trial June 28, 1929, at 9 o'clock a. m., over relator's objection.

Relator alleges that the Grant Superior Court does not have jurisdiction to hear and try any criminal action, and that the court has no jurisdiction to hear and try the cause so filed against him, and has no jurisdiction over the subject-matter of the action for assault and battery begun against him. And, further, that the jurisdiction granted to the Grant Superior Court by the act of the General Assembly in 1909, has not been enlarged by any act of the General Assembly of the State of Indiana, or otherwise.

Upon the presentation of the petition for the writ, the writ was ordered, by which respondents were restrained from exercising jurisdiction of the subject-

matter of this cause of action against relator until the further order of the court, and to show cause, if any they have, why respondents should not be prohibited from proceeding further in such cause of action.

To this order, respondents made return, as follows: Respondent, Robert F. Murray, was duly elected judge of the "Grant and Delaware superior court district," and judge of the Grant Superior Court, at the general election in November, 1926, for the term of four years from January 1, 1927, and until his successor is elected and qualified. In doing the acts and things alleged in relator's petition, this respondent acted in all things as judge of the Grant Superior Court, and not as a special judge or judge of any other court; and that the acts done in said cause against relator in the criminal cause by such court, were done under the jurisdiction granted to said Grant Superior Court and the judge thereof by virtue of an act of the General Assembly, passed at its session in 1929, and known as "senate bill No. 212," which act became a law without the signature of the Governor by lapse of time, as provided by the Constitution of Indiana. By this act the Grant Superior Court of Grant County was given criminal jurisdiction. The General Assembly duly convened in its seventy-sixth regular session at Indianapolis, on Thursday, January 10, 1929, duly organized and entered into and remained in regular session for 61 days and adjourned *sine die* at 12 o'clock p. m., midnight, on Monday, March 11, 1929. In the course of the session of the General Assembly, a bill was introduced in the Senate, for an act entitled "A bill for an act concerning the courts in the counties of Delaware and Grant, and declaring an emergency," which bill was numbered and designated "Senate Bill No. 212." This bill was passed by the Senate and House of Representatives, and by it returned to the Senate March 8, 1929, and the Senate, in open session, handed it down for en-

rollment, and ordered the bill enrolled, which was done, and, subsequent to its passage, it was duly signed by the presiding officer of the Senate, and was also signed by the presiding officer of the House of Representatives. The bill as introduced and numbered 212 was not amended or altered in any manner whatever by the Senate or House of Representatives, and all of the steps incident to the passage of the bill occurred on or prior to March 8, 1929. The bill, as alleged, was engrossed by action of the Senate, and engrossed by action of the House of Representatives, and, as finally passed and enrolled in the Senate and signed by the presiding officers of the House and Senate, is copied in the response to the petition. The bill, if it became a law, created the "Grant Superior Court judicial district," and provided that the Grant Superior Court should continue to exist as modified by this act, designated as "Bill No. 212." Section 11 of the bill gives the Grant Superior Court "concurrent jurisdiction with the circuit court of its respective county . . . in all criminal cases."˙ Section 12 of the bill provides that the first term of the Grant Superior Court shall begin the first Monday after the expiration of the April term, 1929, of the Delaware Superior Court of the Grant-Delaware Superior Court District. The response alleges that the Governor had appointed what is designated a "receiving clerk," whose duty it was to receive all bills of the General Assembly presented to the Governor, and the Governor had directed and authorized his appointed "receiving clerk" to receive all such bills, and had notified the Senate and the House of Representatives of such appointment through the secretary of the Senate and the clerk of the House of Representatives respectively; that the original engrossed Senate bill No. 212, as ordered engrossed by the Senate and by the House of Representatives, is on file in the office of the Legislative Bureau,

with the endorsements thereto authenticating such engrossment; that, on Saturday, March 9, 1929, at 11:45 a. m., the secretary of the Senate took enrolled Senate bill No. 212, which was duly signed and authenticated by the presiding officers of the Senate and House of Representatives, and duly presented this bill to the Governor; and that pursuant to the directions of the Governor hereinafter stated, Senate bill No. 212 was handed to the Attorney-General with a request for his opinion as to its constitutionality; that at the time hereinbefore mentioned, Saturday, March 9, 1929, when the secretary of the Senate called at the Governor's office and then and there had with him and presented certain enrolled bills to the Governor by handing them to the Governor's "receiving clerk," she (the receiving clerk), then and there said to the secretary of the Senate that he take such enrolled bills and all other enrolled Senate bills to the office of the Attorney-General, and that the Governor would send for such bills as he wanted them; that this instruction to the secretary of the Senate, namely, that the secretary of the Senate take such bills to the Attorney-General's office was according to an order by the Governor to his "receiving clerk" "that all bills passed after midnight on March 8, 1929, should be delivered to said Attorney-General, and that said bills were so ordered delivered to said Attorney-General in order that said Attorney-General might examine them and give his opinion thereon as to their constitutionality before they were considered by said Governor"; thereafter, March 11, 1929, the Governor obtained Senate bill No. 212 from the Attorney-General's office, together with the written opinion thereon by the Attorney-General, and that the bill was received by the Governor, and has ever since been in the possession of the Governor in the Governor's office; and it is further alleged by the response that the Governor did not return Senate bill

No. 212 with his objections to the Senate at any time subsequent to its presentation to him as alleged, and that he did not, within five days next after the final adjournment of the General Assembly, file bill No. 212 with his objections thereto in the office of the Secretary of State, but that he (the Governor) retained and still retains the bill No. 212.

By permission of this court, the Attorney-General, as *amicus curiae*, filed a brief in support of the petition for the writ. Thereafter, the Secretary of State, as such officer, asked and was granted permission to file his petition that he be admitted as a party plaintiff, with permission to file a replication to respondents' return. The Secretary of State's petition was ordered filed, but was not granted, and it was further ordered that he reply at a date specified. Thereupon, the Attorney-General filed his replication in this cause. It is necessary first for this court to rule upon the petition of the Secretary of State that he be permitted to intervene in this cause as a plaintiff, as presented by his petition which the court ordered filed. To support his petition to be permitted to intervene as plaintiff, the Secretary of State alleges that an action was brought against him in his official capacity in the circuit court of Marion County, which cause then pending was to mandate him as such official to do and perform each and every act necessary to cause engrossed Senate bill No. 212, passed by the Senate and House of Representatives at the seventy-sixth regular session of the General Assembly, to be printed, bound, and distributed as a law of the State of Indiana, and further alleging by his petition that the engrossed Senate bill No. 212, set forth *in extenso* in the complaint of the cause in the circuit court of Marion County, is the same engrossed Senate bill No. 212, as referred to in respondent's return at bar, and upon which respondents rely in this action; and further alleges that the validity of

engrossed Senate bill No. 212 as a law of the State of Indiana is involved in both actions, to wit, the action pending in the Marion Circuit Court and the action at bar. The petition alleges further that the validity of engrossed Senate bill No. 212 as a law of the state is involved, which, when properly presented, involves a construction of §14, Art. 5, of the Constitution; and further that the validity of this bill cannot be properly and adequately presented without the formation of an issue of fact by way of replication to the respondents' return herein, and that, because of his interest as said Secretary of State as a defendant in the cause in the circuit court of Marion County which involves the same question presented by the case at bar, and because of public interest which he (the Secretary of State) believes will be served by admitting him as a party plaintiff, he asks that he may thus be admitted as a party plaintiff with leave to file a replication.

The official known as the Secretary of State is established by the Constitution, Art. 6, §1. The duties to be performed by such official are not provided in the Constitution, but the Constitution, in the section cited, provides that his duties shall be such as may be enjoined by law. The duties provided by law enacted by the General Assembly do not clothe this official with the power or authority to question in a judicial tribunal the validity of laws enacted by the Legislature. He is not empowered by any duty fixed by law to litigate questions of public interest, especially which involve the validity of a law which, as alleged in his petition, admittedly has been passed by the Senate and House of Representatives. The action which he seeks to take as a party plaintiff does not lie in the field of an administrative officer such as is the Secretary of State. We, therefore, hold that the Secretary of State is not a proper party to

this action, and his petition to intervene as a plaintiff is denied.

The propositions of law presented and considered to sustain and make permanent the writ are: (1) the presentation of the bill to the Governor on Saturday, March 9, 1929, the General Assembly having adjourned finally Monday, March 11, 1929, was too late because in violation of the last sentence of §14, Art. 5, of the Constitution that the Sunday intervening between the day this bill was presented and the day of the final adjournment of the General Assembly could not be counted as one of the days to make the two days designated; (2) that the intent of the General Assembly as expressed in §17 of this bill in the words "shall therefore be in force from and after its passage and approval by the Governor" determines when and how this bill may become a law; (3) and that the bill did not become a law, because it was not published and circulated as provided by law.

Some question is sought to be raised in this proceeding as to whether or not the bill was presented to the Governor as required by the Constitution. The allegation in the response on the point is direct that the bill was presented to the Governor. The point made under the question is based upon the allegation in the response that the secretary of the Senate delivered the bill to the Attorney-General. The secretary of the Senate did not leave the bill with the Governor or his "receiving clerk" upon its presentation, hence there was no legal presentation. The order of the Governor to his "receiving clerk" was especially an order to her and not to the Houses of the General Assembly. The order was that the bills be delivered, when passed after a certain time, to the Attorney-General. The person who was the official secretary of the Senate in delivering the bill to the Attorney-General, after having sought to present it to the Governor through his "receiving clerk,"

did not act in his official capacity, but merely as a volunteer to perform a duty enjoined upon the "receiving clerk" by the Governor. It is not questioned in this proceeding that this bill was passed by the General Assembly as provided by the Constitution ready to be presented by the General Assembly to the Governor. It is admitted that the bill was passed Friday, March 8, 1929. It is nowhere denied that the bill upon its passage and authentication was not *instanter* taken by the Senate, its secretary acting for it in this behalf, and presented to the Governor. Although members of the General Assembly are subject to the frailties of human existence as much after qualification for office as in private life, the presumption must be indulged, to continue the orderly existence of the government, that members of the General Assembly fully perform their duties. And this presumption prevails where the matter is not made an issue as a principal or evidentiary fact. McKelvey, Evidence p. 83, §52. Such an issue is not presented in this case.

The first proposition as stated presents the question whether Sunday, March 10, is to be counted to make one of the two days next previous to the final adjournment of the General Assembly when a bill may be presented to the Governor. In considering this proposition, the court will go outside the record. It became a fixed rule of law coming from the common law, and upheld in the United States, that the courts cannot forget the law, neither can a law be blotted out of existence by actual destruction of any evidence of it and therefore blotted from the minds of the courts. The courts are presumed and bound to know what is the law of the land, and, in order to fortify such a knowledge, judges of the courts are duty bound, where the existence of a law cannot be brought to the test of proof by record, to inform themselves in the best way they can to uphold

the law's existence. *Gardner* v. *The Collector* (1867), 6 Wall. (U. S.) 499, 509, 18 L. Ed. 890. The length of the session of the General Assembly, except the first under the present Constitution, shall not extend beyond the term of 61 days (§29, Art. 4, Constitution), and the sessions of the General Assembly shall commence on the Thursday next after the first Monday of January. (Art. 4, §9, Constitution.) The court looks to the records of the sessions of the General Assembly and finds that not one session extended for a longer period than 61 days, including therein the intervening Sundays. If Sundays are counted to make the 61 days, there being nine Sundays during the session, such session must, by operation of the Constitution, end by midnight on the first Monday after the ninth Sunday in such session. This custom, without variance, has been continued for 76 years. The construction of the Constitution by the General Assembly has been ever since the Constitution was adopted that Sundays are to be counted in limiting the time of the 61 days within which the General Assembly may lawfully be in session. Such a practical construction must and does have great weight with the court in deciding the constitutional question. *Okanogan, etc., Indian Tribes* v. *United States* (1929), 279 U. S. 655, 49 Sup. Ct. 463, 469, 73 L. Ed. 894, 64 A. L. R. 1434.

The court may look beyond the record to historical facts as a foundation for its reasoning and to fortify its conclusions where the question is, What is the law? The available history, which, however, was made a matter of record, is that, for a period of 36 years, the last sentence of Art. 5, §14, Constitution, was construed in counting the two days next previous to adjournment, Sunday was to be included. This construction of the Constitution was given by Governor James D. Williams (House Journal 1879 p. 1158). The court knows from former recorded history that from

1915 to 1929, when the bill in question was passed, according to the recorded message of Governor Samuel Ralston (Senate Journal 1915 p. 1087), the construction of the last sentence of §14 of Art. 5 was that Sunday was not to be counted in the two days next previous to the final adjournment of the General Assembly. If the General Assembly did not adjourn until Monday succeeding the ninth Sunday of the session, the two days were to be made up of Monday and the Saturday preceding, and the bill, to be legally presented under such construction, must be presented before midnight the last Friday previous to such final adjournment. The court is not so well fortified by custom in the interpretation of the last sentence of §14, *supra,* as it is in the interpretation of that part of the Constitution which provides the length of its sessions. In so far as length of time is concerned, the custom of counting Sunday to make up the two days in question outweighs the custom of not counting Sunday.

It is a rule of statutory and constitutional interpretation that, where a restriction is not general but is provided in a specific instance, such application of the specific instance will not be carried into other statements which do not provide such limitations. *City of Evansville* v. *State, ex rel.* (1889), 118 Ind. 426, 442, 21 N. E. 267, 4 L. R. A. 93; citing *Page* v. *Allen* (1868), 58 Pa. St. 338, 98 Am. Dec. 272; *Ex parte Vallandigham* (1864), 1 Wall. (U. S.) 243, 252, 17 L. Ed. 589.

The Attorney General, *amicus curiae,* reasons that, because §14, *supra,* gives to the Governor three days, Sunday excepted, after a bill shall have been presented to him, in which he may consider it before action, the section contemplates that Sunday is to be excepted also in the last sentence of the section,

which would make it read: "But no bill shall be presented to the Governor within two days, Sunday excepted, next previous to the final adjournment of the General Assembly." We are firmly of the opinion that such should not be the interpretation of this last sentence as it appears in §14. If Sundays are to be excepted throughout this section, the holding might as well be carried to §29 of Art. 4, and make the last sentence of it read: "No session of the General Assembly, except the first under this Constitution, shall extend beyond the period of sixty-one days, Sundays excepted," which would then permit the Legislature to remain in session 10 weeks and one day from the day when such session commenced. Such has never been the popular interpretation of the Constitution. Such has never been the official interpretation of the Constitution by any of the General Assemblies which have met under it. Furthermore, the sentence in §14, *supra*, which excludes Sunday, applies specifically to the Governor and not to the General Assembly. The last sentence of the same section, the one under consideration, applies only to the General Assembly, and is in no way an inhibition to the Governor to receive a bill if sought to be presented to him by the General Assembly, but has to do only as an inhibition and a restraint of power upon the General Assembly. It is to be presumed that the Constitution was carefully made, and that every word in it was carefully chosen to express the intention of the constitutional convention, and especially to express any limitation on a power granted by it unless expressed in such language readily and easily interpreted by any of the citizens under its authority.

Under the second proposition that in any event this bill could not become a law until it was approved by the Governor, as specifically stated in §17 of the bill, the point is, as stated by the brief:

"Where the intention of the Legislature is expressed in unequivocal terms, courts will, if possible, interpret the statute to give effect to the legislative intention." The proceedings by the General Assembly and the actions of the Governor necessary for the passage of a bill and to make it a law are stated in the Constitution. The necessary procedure, as thus stated by the organic law, may not be enlarged, curtailed, changed or modified by any governmental authority. We think it unnecessary to argue or discuss the proposition, for the reason that the Constitution itself determines the question. It is provided (§25, Art. 1, Constitution, §77 Burns 1926): "No law shall be passed the taking effect of which shall be made to depend upon any authority except as provided in this constitution." To provide in the bill itself that it may not become a law as provided in §14, Art. 5, by lapse of time, is to propose to grant authority to the Governor to determine whether the bill shall become a law contrary to the Constitution.

The third proposition: This bill, after its passage and enrollment and presentation to the Governor, was not delivered by the Secretary of State to the state printer, and it was not printed under authority together with the other laws passed by the General Assembly at its seventy-sixth session. This bill had in it an emergency clause to the effect that "the same shall thereafter be in force from and after its passage," etc. The Constitution by Art. 4, §28, provides that where an emergency shall be declared in the preamble or in the body of the law, it is unnecessary for it to become a law that it be published and circulated in the several counties of the state by authority. This section has been plainly interpreted by the court that a bill will become a law at the expiration of the time given to the Governor by the Constitution to file the bill with the Secretary of State, together with his (the Governor's)

objections thereon, where the bill provides that an emergency exists for it to become effective upon its passage. *State, ex rel.*, v. *Wheeler* (1909), 172 Ind. 578, 588, 89 N. E. 1, 19 Ann. Cas. 834; *Shutt* v. *State, ex rel.* (1909), 173 Ind. 689, 89 N. E. 6.

The seventy-sixth session of the Legislature made its final adjournment March 11, 1929. It is pleaded that the bill was in the possession of the Governor in the Governor's office March 18, 1929, and that it had been continuously in his physical possession from the time the Governor sent for and obtained the bill from the Attorney-General with the Attorney-General's written opinion thereon. The Attorney-General argued the law of this case orally in behalf of the relator. In the oral argument, he presented to the view of the court enrolled Senate bill No. 212, and admitted to the court that he had obtained it from the Governor's office for the purpose of showing it in oral argument. The bill as presented disclosed that it was authenticated as required by the Constitution by the presiding officers of the Senate and House of Representatives. The Constitution intends that the bill shall be in the possession of the Governor from the time it is presented to him. The actual possession of the bill by the Attorney-General under the explicit direction of the Governor is as a matter of law in the possession of the Governor himself. The Governor is entitled to the full time granted by the Constitution to consider the bill in order for him to determine whether he will approve the bill or return it to the General Assembly with his objections thereto, or return it to the Secretary of State with his objections. That the bill is in the hands of another person designated by the Governor to make examination for him, does not, as a matter of law, take it out of the possession of the Governor.

It is decided that Senate bill No. 212, which passed

the General Assembly Friday, March 8, 1929, was presented to the Governor on the following day, Saturday, March 9; that such presentation to the Governor was prior to two days next previous to the final adjournment of the General Assembly, which final adjournment occurred Monday, March 11, 1929; that the Governor did not approve the bill and that he did not return it to the house of the General Assembly in which it originated prior to the final adjournment of the General Assembly, and that he did not, within five days after such adjournment of the General Assembly, file such bill with his objections thereto in the office of the Secretary of State; and it is finally decided that the bill became a law without the signature or the disapproval of the Governor within the time allowed by law.  *State, ex rel.,* v. *Wheeler, supra.*

The finding of the court is for the respondents upon their response and against the relator upon his petition, and that the writ heretofore issued by the court upon the presentation of the petition which restrained respondents from exercising jurisdiction of the cause against relator then pending in the Grant Superior Court should be quashed.

It is, therefore, adjudged that the relator take nothing, and that the writ heretofore referred to in the findings be quashed, and that the relator pay the costs of this proceeding.

Gemmill, J., not participating.